## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 19 CR 30116-001(NJR) |
| | ) | |
| DERRICK SAMPSON, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT SAMPSON'S SENTENCING POSITION PAPER

**NOW COMES** the Defendant, **DERRICK SAMPSON,** by and through his attorney, **ROBERT L. RASCIA**, pursuant to Rule 31 of the Federal Rules of Criminal Procedure and United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, (2005) and respectfully submits his sentencing position paper.

### I.     Guideline Calculation.

The Presentence Investigation Report at page 7 paragraph 37 states that the total offense level is 27. The base offense level is 30 (Guideline §2D1.1(c)(5) a reduction of 3 levels is applied for acceptance of responsibility (Guideline 3E1.1(a) and (b), and a 2 level reduction is applied pursuant to application of guideline §5C1.2, the safety valve provision, 18 U.S.C. 3553(f) and guideline §2D1.1(b)(18).

The defendant's criminal history category is I, as indicated on page 9, paragraph 45. The defendant agrees with the guideline calculation outlined in the presentence investigation report. The plea agreement contains the identical guideline calculation. The total offense level results in an advisory guideline sentencing range of 70 to 87 months.

## II.        Nature of the Case.

The defendant was charged in a four count indictment alleging the distribution of cocaine and heroin between August of 2017 continuing until on or about March 13, 2019.

The defendant, through his guilty plea, acknowledged that he conspired with Jerel Bryan to distribute heroin and cocaine. Sampson sourced the drugs to Bryant. The total drug quantity involved is 2272 grams of heroin and 2000 grams of cocaine.

The seizures of drugs by the DEA came initially through a traffic stop and subsequent vehicle search of a vehicle driven by Bryant. A search of that vehicle resulted in the recovery of 98.2 grams of heroin from the trunk of the vehicle. During a post-arrest interview Bryant identified Sampson as his drug source.

A few weeks after the Bryant encounter law enforcement agents deployed a confidential source (CS) to communicate with the defendant and arrange a purchase of heroin from the defendant. That investigation resulted in the seizure of 299.2 grams of heroin from the defendant's person, and 672.9 grams of heroin from inside the defendant's apartment. During the March 13, 2019 encounter with law enforcement the defendant was cooperative with the arresting agents, acknowledged his involvement in drug distribution, and consented to the search of his residence, which resulted in the seizure of 672.9 grams of heroin, and the factual basis for the two level increase in the offense level pursuant to Guideline §2D1.1(b)(12), as well as increasing the drug quantity.

Following the March 13, 2019 encounter with law enforcement the defendant was released. On August 29, 2019 the defendant was arrested in the Northern District of Illinois, without incident. On September 30, 2019 the defendant was released on bond with conditions. The defendant has been in compliance with the conditions of his bond.

-2-

The defendant entered a plea of guilty, pursuant to a written plea agreement, on August 18, 2021. Thereafter the defendant has remained on bond and he continues to be in full compliance with the bond conditions.

### III.   §3353(a) Argument

Pursuant to §3553(a)(2), the defendant's sentence must reflect the seriousness of his offense, promote respect for the law, and deter him and other similarly situated individuals from engaging in criminal activity. The Federal Sentencing Guidelines provide a sentencing range in each case based on the severity of the offense and the offender's prior criminal history. The advisory ranges are listed on the sentencing table, found in Chapter Five, Part A of the Guidelines Manual. The sentencing table is subdivided into four zones (A,B,C, and D) which determine confinement options for each sentencing range. The four options, in increasing order are: probation only (i.e. zero months of confinement); probation that includes conditions or a combination of conditions such as home or intermittent confinement; imprisonment followed by a term of supervised release with conditions or a combination of conditions that substitute community confinement or home detention (a split sentence); and imprisonment only.

The sentencing guidelines have been made advisory and are no longer mandatory under the decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Booker requires the sentencing judge to begin the sentencing process by determining the applicable guideline range, but permits the judge, so long as they do not stray outside the statutory range, to sentence the defendant below or above the guideline range if the sentencing factors in the Sentencing Reform Act, 18 U.S.C. § 3553(a) warrant it. United States v. Roberson, 474 F. 3d 432 (7th Cir. 2007). The defendant acknowledges that the

-3-

advisory guideline sentence is the presumptively reasonable sentence. <u>United States v. Mykytiuk</u>, 415 F. 3d 606 (7th Cir. 2005). However, the court should not presume that it is the correct sentence. <u>Unites States v. Brown</u>, 450 F. 3d 76 (1st Cir. 2006).

A sentencing judge must make an independent determination of what sentence is sufficient, but not greater than necessary, to comply with the purposes of §3553(a), taking into account the advisory guideline range, the relevant §3553(a) factors, and any other non-frivolous arguments presented in support of a particular sentence. <u>United States v. Wilms</u>, 495 F.3d 277 (6th Cir. 2007).

As a result of Booker and its progeny, it is now well settled that the sentencing courts are expected to treat the sentencing guideline as advisory, viewing them as but one factor to consider in fashioning a sentence that meets the statutory goals set forth by Congress in 18 U.S.C.§3553(a). Thus, this court is no longer bound solely by the guidelines but must consider the factors outlined in §3553(a). As long as this court considers all of the factors of §3553(a), its' "freedom to impose a reasonable sentence outside the range is unfettered." <u>United States v. Demaree</u>, 459 F. 3d 791, 794 (7th Cir. 2006). Pursuant to 18 U.S.C. §3553(a) the court must impose a sentence sufficient but not greater than necessary after considering the factors listed in §3553(a). These factors include: the nature of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and sentencing range established by sentencing guidelines.

In <u>Rita v. United States</u>, 551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007) the court confirmed that, as to the sentencing court, the guideline range is simply one of several factors listed on 18 U.S.C. §3553 that must be considered in arriving at a just sentence, a sentence that is sufficient, but not greater than necessary, to meet the traditional

purposes of criminal sentence. The District Court's job is not to impose a "reasonable" sentence but instead to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of section §3553(a)(2). United States v. Foreman, 456 F. 3d 638 (6th Cir. 2006). This language, also referred to as the "parsimony provision" of §3553(a), has become the "guidepost" for sentencing decision post-Booker. United States v. Ferguson, 456 F. 3d 660 (6th Cir. 2006).

### A. Defendant's Personal History.

Derrick Sampson is 42 years old, a United States Citizen, born in Chicago, Illinois, currently residing in the Chicagoland Western Suburb of Forest Park, Illinois. The defendant is the father of three minor children, aged 12, 10, and 15 months. The defendant financially supports each of his children through his employment at Christy Weber landscaping in Chicago as a commercial vehicle operator. The defendant has been employed at Christy Weber since 2000.

The defendant's parents live in Cottonport, Louisiana. The defendant's mother is 79 and his father is 81, both are retired. The defendant is one of 8 children born to the marital union of his parents, one of which died in a tragic fire accident in 1985, when the defendant was six years old. The defendant has five older siblings and one younger sibling, residing in Louisiana (2); Illinois (2); Georgia (1); and California (1).

The defendant was raised primarily on the west side of Chicago, a traditionally high crime area where drug trafficking and violent crime were rampant. The defendant 's large family moved multiple times during his childhood, into the limited affordable housing available based on his father's labor income. The defendant witnessed a murder in his neighborhood at the age of 8.

The defendant's household circumstances were difficult, due to limited financial resources, the large family living under one roof, and in large part due to his father's alcohol abuse and regular intoxication. The defendant regularly witnessed alcohol fueled episodes from his father which often resulted in physical abuse directed at his mother, and each of the children at various repeated times.

The defendant never developed a strong bond with either of his parents. The father's alcohol fueled outbursts caused the defendant to fear his father and mostly avoid any real contact with him. The defendant felt that his mother was essentially unavailable to give him one-on-one time as a child, and accordingly a strong bond never developed.

The lack of a strong family bond led the defendant to the streets where trouble soon followed, in the form of multiple arrests between 16 and 19. All of these arrests are drug related, 3 of which resulted in a conviction, 2 which resulted in a prison sentence at the age of 17. Four of the arrests were disorderly conduct, each of which was dismissed. The defendant remained arrest-free between the ages of 19 and 35. The defendant's next arrest was for this offense. the defendant's arrest pattern appears to interrupt at about the time he received meaningful full-time employment with Christy Weber Landscaping. The defendant has maintained that fill-time employment for over 21 years.

The defendant began his career at Christy Weber Landscaping as a laborer, then on to a machine operator, and then to a commercial vehicle driver. Christy Weber Landscaping is staffed by 400 horticulturalists, designers, managers, and labor force that, according to their website, produces $38 million in revenue. Mr. Sampson has been a valued and trusted employee of this certified woman-owned business for over two decades.

The defendant has significant physical health issues and is currently in treatment after a 2019 diagnosis of Myasthenia Gravis, an autoimmune disorder. The symptoms include double vision and muscle weakness/failure. This condition is caused by a breakdown in communication between nerves and muscles. This condition has caused significant issues with the defendant's arm and leg muscles, and speech. The defendant's current course of treatment includes blood transfusions two times a year. The defendant has ongoing diagnostic appointments that are necessary to monitor this illness, including an upcoming appointment with a hematologist. The defendant also takes medication for high cholesterol.

The defendant attended John Marshall High School, and later obtained his GED from Robert Morris College in Chicago. The defendant continued his education at Robert Morris College for 2 years, and he also attended Coyne Technical College a trade/vocational program for HVAC installation and repair.

The defendant has a reported history, and family history, of alcohol and illegal drug use, and he has attended an outpatient substance abuse treatment program while on bond. He would likely benefit from continuing participation in a treatment program. The defendant also appears to have a gambling addiction and would benefit from counseling on this issue as well

**B.      Need for Sentence Imposed.**

Pursuant to 18 U.S.C §3553(a), the Court must impose a sentence which is sufficient but not greater than necessary after considering the factors listed in §3553(a). the factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offence and promote respect for the law; (3) to afford adequate deterrence

to criminal conduct; (4) to protect the public from further crimes of the defendant, and (5) the sentence must take into account the kinds of sentence and the sentencing range established for the offense.

The defendant understands that he will inevitably serve a lengthy term of incarceration in this case. The emotional toll caused by this incarceration and separation from his family will be sufficient to deter Mr. Sampson from committing any further crimes in the future. Whenever he is eventually released from prison Mr. Sampson will be older and more mature than he was when he made the decision to engage in his criminal conduct in this case, and he is fully aware that any further criminal activity in the future would result in extraordinarily harsh consequences for him. The public will be adequately protected from further crimes by this defendant due to his incarceration, which will be followed by a period of supervised release

The defendant recognizes that his upcoming separation from his family and children has occurred as a direct consequence of his own mistakes, and he is heartbroken that his own poor judgment has caused this absence during the most formative years of his young children. But he remains hopeful that he can be released from prison when there is still time to provide meaningful parental guidance to his children before they have grown out of their young adulthood. He is hopeful that this parental guidance could help them avoid making the same mistakes that their father has made. Mr. Sampson would cherish any opportunity to redeem himself in the eyes of his children, his family, his community, and society at large. He is determined to become a better role model and father figure in the future.

Fortunately, Mr. Sampson will enjoy the continued support of his family whenever he is eventually released from custody. These positive relationships will be a viable emotional

support structure for him going forward and they will encourage him to make better decisions in the future. This positive guidance will be very helpful to Mr. Sampson when he is working hard to reintegrate himself back into law-abiding society.

Thankfully, Mr. Sampson has a strong work history and marketable job skills which will help him to financially support himself through legitimate employment without any temptation to return to the criminal lifestyle. Although Mr. Sampson had prior criminal history when he was a much younger man, he has nonetheless demonstrated an ability to live a law-abiding lifestyle and support himself of gainful employment for extended periods of time. Mr. Sampson's past employment history is a reliable predictor of his future behavior His strong work ethic will enable him to overcome the struggles and difficulties of establishing a new life after his release.

Most importantly of all, Mr. Sampson has taken full responsibility for his actions and he has demonstrated a newfound respect for the law. Mr. Sampson was remarkably cooperative with law enforcement when he was arrested, and he has acknowledged his involvement in this criminal scheme by pleading guilty. Mr. Sampson has also remained in compliance with his pretrial release throughout the pendency of this case.

Additionally, it is also appropriate to consider that Mr. Sampson's custodial sentence will be more onerous than it would usually be under normal circumstances, because of his serious medical condition and the public health protocols and restrictions that are in place (including quarantine procedures) as a result of the global COVID-19 pandemic.  Under these circumstances the defendant urges the lowest possible sentence that the Court deems adequate to serve the sentencing goals.

IV.    **Conditions of Supervised Release.**

The defendant has reviewed the proposed conditions of supervised release and has not objections to them.

Respectfully Submitted,

s/Robert L. Rascia/January 11, 2022
ROBERT L. RASCIA, ARDC No. 6184470
Attorney for the Defendant

The Law Offices of
Robert Louis Rascia, Ltd
650 N. Dearborn/Suite 700
Chicago, Illinois 60654
312-994-9100 Office
312-994-9105 Fax
rrascia@rasciadefense.com; Email

-10-